Mary Walters, Appellee, v. Checker Taxi Company,
Appellant.

Gen. No. 35,473.

Opinion filed February 29, 1932.

JAMES C. BYRNE and BUSBY, WEBER, MILLER & DONOVAN, for appellant.

WM. E. RODRIGUEZ, for appellee; JOHN M. HUMPHREY, of counsel.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against the defendant to recover damages for personal injuries claimed to have been sustained by her through the negligence of one of defendant's drivers. There was a jury trial and a verdict of $25,000 in plaintiff's favor. Plaintiff entered a remittitur of $10,000, judgment was entered in plaintiff's favor for $15,000, and the defendant appeals.

The record discloses that on January 30, 1923, while plaintiff was a passenger in one of defendant's taxicabs, the cab collided with the safety island at Madison street and Michigan avenue, in Chicago, injuring plaintiff, and on March 7, 1923, she brought suit. From time to time the case was stricken off the docket and put on the calendar of cases that had been passed. In May, 1926, the case came on for trial before Judge Fisher, both parties appeared by counsel, and when the case was called the court suggested that the parties settle the controversy. At that time the defendant taxicab company had a number of suits and claims filed against it and was in financial difficulties, and parties had been settling their claims, defendant making payments thereon from time to time as it earned the money. At the suggestion of the court the parties withdrew to the court's chambers and an agreement of settlement was reached, plaintiff's version of the matter being that she was to be paid $5,000, payments to be made from time to time, and in case it later developed that she was permanently injured, the settlement was not to be binding and the case could then be tried.

On the other hand, defendant's version of the matter was that a settlement had been reached, the defendant agreeing to pay $3,000, $100 a month, or, as some of the witnesses testified, $100 a week, and that when the $3,000 was paid a release would be given and the matter disposed of in court.

After the agreement was reached Judge Fisher continued the case generally and a few days later, May 12, 1926, defendant paid plaintiff $150, and thereafter made the following payments in 1926: July 19, $100; September 8, $75; October 5, $75; December 20, $150; in 1927: February 23, $175; March 9, $100; April 6, $100; June 23, $100; August 4, $100; September 6, $100; October 7, $100; November 23, $100; December 21, $100; and in 1928: January 11, $75; February 13, $200; February 22, $300; and on March 8, defendant made a tender of $400 and demanded release. This $400, together with other payments would aggregate $2,500. Counsel for plaintiff refused to accept this and pointed out the settlement had been made for $3,000, and on September 8, 1928, the defendant tendered the other $500. Plaintiff refused to accept the last two payments and they were deposited with the clerk of the court.

In January, 1930, the case went to trial before Judge Rush and a jury, and there was a verdict in plaintiff's favor for $14,000. Afterwards a new trial was granted and on July 7, 1931, the case went to trial before Judge Summers. There was a verdict of $25,000. The court gave the jury a special interrogatory as to whether the claim had been settled, and the jury answered it in the negative. Afterwards, plaintiff remitted $10,000, the motion for a new trial was then overruled and judgment entered for $15,000.

On this appeal the defendant does not question its liability but contends that the verdict of the jury to the effect that there had been no settlement, is against the

manifest weight of the evidence, and that the court erred in giving certain instructions.

Is the verdict against the manifest weight of the evidence on the question of settlement? Plaintiff was the only witness who testified on this question in her behalf. On cross-examination she testified that her lawyer was Mr. Davies and that Mr. Bynum did not represent her but that they were associated together in the case. Davies died prior to the trial. She further testified that Bynum sent the checks to her as they were received by him from the defendant company, and that she got two-thirds of each check and the lawyers the one-third; that when the case was up for trial before Judge Fisher she went to court with Mr. Davies and Mr. Bynum and the witnesses; that when the case was called Judge Fisher suggested that the parties might settle the case and that then the lawyers discussed the matter and it was agreed that defendant would pay $5,000 and if it was later found that the plaintiff was permanently injured, the case would be opened up and tried; that she was to be paid $5,000 in settlement. Fred Kanst, called by the plaintiff, testified as to how the accident occurred when plaintiff was injured. On cross-examination he testified that when the case came up before Judge Fisher he went to court and he was there told by plaintiff's lawyer that the case had been settled, so that he would not have to testify, and he then left.

James L. Bynum, called by the defendant, testified that he was a lawyer and had practiced his profession for about 25 years, the last 15 years largely in personal injury cases; that he was requested by Mr. Davies, attorney for plaintiff, to try the case for him; that he had tried a number of cases for Mr. Davies; that afterwards he was introduced by Davies to plaintiff and they went over the case in detail as to how the accident occurred, and the nature of the accident and

of plaintiff's injuries, and prepared the case for trial, having conferred also with the doctors; that when the case was on the trial call of Judge Fisher, witness appeared on behalf of defendant with Mr. Davies, ready to try the case when it was called; that both sides stated they were ready for trial; that Judge Fisher suggested the parties might settle the controversy; that all the parties then went into the judge's chambers and the question of settlement was discussed; that they finally reached an agreement whereby defendant was to pay plaintiff $3,000 and that was the most defendant would pay because if the case was prosecuted and a judgment obtained, there would probably be bankruptcy proceedings against the defendant. He further testified that they talked the matter over with plaintiff for a considerable period of time; that she thoroughly understood the matter; that they then went back to the court room and explained the matter to Judge Fisher and plaintiff finally agreed to accept the $3,000; that he made a memorandum on an envelope of the amount agreed upon; that they would pay the amount agreed upon in instalments and after the settlement they agreed the case was continued. He further testified that he received the payments above set forth, and the checks are in the record. They are all made payable to "Mary Walters and James L. Bynum, her attorney," and it is undisputed that plaintiff received two-thirds of each of these checks. Bynum further testified that about March 8, 1928, when defendant sent him a check for $400 and demanded a release, the witness refused the check on the ground that there was $900 due on the settlement for $3,000 and not $2,500. Later the check for the other $500 was given but plaintiff refused to accept the $900.

Edwin Mitchell testified that he was a lawyer associated with Bynum and that he was in Judge Fisher's court at the time in question, but not in chambers, and

that the parties came out of the judge's chambers and stated they had settled the case, and the amount of the settlement was discussed.

Edgar H. Deets, attorney at law, associated with Bynum, testified that he was present at Judge Fisher's court at the time the case was settled and that he took the checks received by Bynum from the defendant from time to time to plaintiff at her home.

Seymour Sheffres, attorney at law connected with the defendant company, testified that he was in Judge Fisher's court at the time the case was called for trial; that the lawyers and the parties were there and Judge Fisher took a hand in the matter with a view of settling the case; that it was agreed to pay $3,000 and that he would try to pay $100 a week until the amount was paid; that this took place in the judge's chambers and then Mr. Davies and Mr. Bynum went out into the court room and talked to the plaintiff and came back and said she would accept the $3,000; that it was agreed that a release would be prepared and executed by the defendant when the final payment was made. The Checker Taxi Company was at that time in financial difficulties and if a judgment were taken against it there would probably be a receiver and bankruptcy proceedings. The settlement was agreed upon and the case placed upon the calendar of passed cases. This is substantially all the evidence on the question of settlement.

If plaintiff's version of what took place at the time is accepted, there would be no settlement at all. She testified that $5,000 was the amount agreed upon and if it later turned out that she was permanently injured the case would be tried and the settlement off. It must be remembered that this settlement was made three years after the accident. On the other side, the witnesses testified to the effect that settlement was made for $3,000, to be paid in instalments, and a release taken when final payment was made.

We think the finding of the jury in favor of the plaintiff to the effect that there was no settlement is against the manifest weight of the evidence, and in these circumstances it is our duty under the law to reverse the judgment. *Donelson v. East St. Louis & Suburban Ry. Co.*, 235 Ill. 625.

Complaint is made of the giving of instructions 1, 2 and 4, requested by plaintiff. Instruction No. 1 directed a verdict for the plaintiff in case the jury found the facts as therein stated, and it is said this was erroneous because it did not take into consideration the question of the settlement of the case. We think this contention is not warranted because it was admitted that the defendant owed plaintiff, in any view of the case, $900, being the balance of the $3,000, for which sum it contended the case had been settled.

Instruction No. 2 was on the question of damages, and it is said that by it the jury were told to take into consideration all the facts and circumstances shown by the evidence in determining the question of damages, and that it did not tell them that on this question they should confine themselves to the evidence touching the question of damages. We think there is no merit in this contention. The instruction is the usual one given in such cases.

Instruction No. 4 is complained of because it enumerates elements to be considered "In determining upon which side the preponderance of the evidence is," and that it omits the element of the number of witnesses, and further, that the instruction told the jury what elements they *should* take into consideration instead of what elements they *might* take into consideration. We think neither of these objections would warrant us in reversing the judgment. There may be some little inaccuracy in the instructions in regard to the first contention made, but we think it not of a serious character. *Elgin, J. & E. Ry. Co. v. Lawlor*, 229 Ill. 621. There is no merit in the second contention.

There are some cases where language is used which would suggest that an instruction which tells the jury what evidence they "should" take into consideration, is erroneous. But we think the word is the proper word. The jury does not have any option to consider any evidence they may think proper. It is their duty to consider the evidence admitted by the court. *Posch v. Chicago Rys. Co.*, 221 Ill. App. 241; *Meyer v. Mead*, 83 Ill. 19. In the latter case an instruction told the jury what they *must* take into consideration, and we think that is a better and more correct word than that they *may* or *might* take such evidence into consideration.

For the reason that the verdict is against the manifest weight of the evidence on the question of the settlement, the judgment of the circuit court of Cook county is reversed and the cause remanded.

*Reversed and remanded.*

McSurely and Matchett, JJ., concur.