Bess Goldberg, Appellee, v. Capitol Freight Lines, Ltd. et al. Bluebird System, Inc. and Bluebird Coach Lines, Inc., Appellants.

Gen. No. 41,883.

Heard in the first division of this court for the first district at the October term, 1941. Opinion filed April 20, 1942.

Hinshaw & Culbertson, of Chicago, for appellants; Oswell G. Treadway, of Chicago, of counsel.

Ryan, Sinnott & Miller, of Chicago, for appellee.

Mr. Justice O'Connor delivered the opinion of the court.

Plaintiff brought an action against defendants to recover damages for personal injuries claimed to have resulted from their negligence. During the trial plaintiff dismissed as to defendants, Lloyd Gisinger and Arthur J. Gisinger. There was a verdict in plaintiff's favor against the three remaining defendants for $85,-000. The court required a remittitur of $25,000, judgment was entered for $60,000 and two of the defendants, Bluebird System, Inc., a corporation, and Bluebird Coach Lines, Inc., a corporation, appeal.

The record discloses that plaintiff, a young woman about 22 years of age, lived at 1618 S. Homan avenue and was employed downtown as a stenographer. About 8:20 o'clock on the morning of May 17, 1939, she left her home for her place of employment, downtown, walked south on the west side of Homan avenue intending to take a downtown street car on Ogden avenue, a street extending northeast and southwest. She started across Ogden avenue on the south cross-walk and when she was somewhere near the first street car rail was struck by a bus of the Bluebird System then being driven southwesterly in Ogden avenue. The accident was caused by a collision between the bus and a truck belonging to defendant, Capitol Freight Lines, Ltd., which was being driven by defendant, Lloyd Gisinger, northeasterly in the easterly street car track and which turned to the left into Homan avenue.

Ogden avenue at this point is a "through" street, 110 feet wide from curb to curb and 160 feet wide from building line to building line. There were two street car tracks in Ogden avenue, which occupy a space of

18 feet 9 inches in the center of the street. The tracks are 8 feet 6 inches apart. The trolley poles are located between the two tracks and have cross bars on them to which the power wires are attached. The pavement from the street car track to the curbs is more than 45 feet. There are two safety islands in Ogden avenue on each side of its intersection with Homan avenue, one of them outside the southeastern rail of the downtown street car track and the other outside the northwesterly rail for street cars going in the opposite direction. Homan avenue is 30 feet 3 inches wide from curb to curb and runs north and south. The street is 66 feet wide. Both streets are well paved with asphalt and concrete except the two street car tracks and the space between them in Ogden which are paved with brick.

The bus was being driven from somewhere in downtown Chicago to Joliet. The morning was bright and the streets in good condition.

Plaintiff testified that as she started across Ogden avenue she saw an automobile and the bus coming down Ogden avenue. The automobile apparently passed behind her and she stopped to let the bus which she said was coming "very fast" pass in front of her, when suddenly the bus turned sharply to the right, collided with the truck which had turned into Homan avenue, and struck her. The evidence shows she was dragged southwesterly by the bus, to where it stopped on the sidewalk, a distance of about 60 or 70 feet, on the southwestern side of Ogden and Homan avenues. She was taken from underneath the bus back of the front wheel. The left front of the bus collided with the right front of the truck, and the pictures in the record indicate that the vehicles came together with a great deal of force. Plaintiff's evidence is further to the effect that the bus was being driven southwesterly in Ogden avenue some distance from the street car track, while evidence on behalf of the Bluebird Company is

to the effect that the bus was being driven southwesterly in the street car track.

Defendant Lloyd Gisinger, a young man about 26 years of age, who lived at Cisco, Illinois, was driving the truck and his uncle, Arthur J. Gisinger, a defendant, was in the bunk back of the driver's seat of the truck. They were bringing a load of ammunition and brass which they picked up the evening before at East Alton, Illinois, and were to make delivery at 1401 Fulton Street at the corner of Ogden avenue, about 3 miles further on from the place of the accident. The approximate weight of the tractor was 6,200 pounds, the trailer unloaded was 9,000 pounds and they had a load of about 17,000 pounds. The testimony of Lloyd Gisinger was that he and his uncle took turns at driving and on the morning in question he had driven from Pontiac to the place of the accident; that just before the accident he was driving northeasterly in the street car track at a speed of about 15 to 20 miles per hour; that he and his uncle were both familiar with driving on Ogden avenue, in Chicago; that they had been hauling loads of merchandise over this street for some time prior to the accident. He further testified that when he was about a block from Homan avenue, where the accident occurred, a small, red delivery truck was being driven to his right northeasterly in Ogden avenue, and just before it reached Homan avenue cut in to the left in front of him and suddenly stopped at Homan avenue, that to avoid running into this small delivery truck he turned sharply to the left into Homan avenue and the collision occurred.

The evidence of the Bus Company is to the effect that the bus was not being driven fast; that the speed was about 20 to 25 miles per hour and when the bus had reached a point near the street intersection, the truck turned abruptly to the left in front of the bus and the driver of the bus, in an endeavor to prevent a collision,

turned sharply to the right. The driver testified he did not see plaintiff at all.

There is a great deal of other evidence in the record. A number of physicians were called by plaintiff and testified at considerable length, some of them as to the treatment they administered to plaintiff. Some others answered hypothetical questions, and the testimony is that plaintiff was very severely and permanently injured.

Counsel for the Bus Company contend the court erred in refusing to direct a verdict in its favor at the close of plaintiff's evidence and again when it renewed its motion at the close of all its evidence.

The motion made by the Bus Company at the close of plaintiff's evidence could not be renewed after the Bus Company put in evidence, and the motion could not be reserved, as the court attempted to do. When defendants put in evidence after making their motion at the close of plaintiff's case, for a directed verdict, that motion was out of the case for all time. It could not be reserved and it could not be renewed. *Popadowski v. Bergaman,* 304 Ill. App. 422; *Kahler v. Marchi,* 307 Ill. App. 23; *Hirshman v. National Mineral Co.,* 311 Ill. App. 169.

In the *Popadowski* case we said: "Where a defendant makes a motion at the close of plaintiff's case for a directed verdict, if he desires to save his point, he must introduce no evidence. But if he puts in his evidence and desires a directed verdict, he must make a *second* motion for a directed verdict. The court in passing on the second motion, must do so in view of all the evidence. (*Cook v. Aevermann,* 244 Ill. App. 644 (Abst.); *Joliet A. & N. Ry. Co. v. Velie,* 140 Ill. 59; *Fowler v. Chicago & W. I. R. Co.,* 182 Ill. App. 123.) Some opinions inaccurately state the law to be that where a defendant moves for a directed verdict at the close of plaintiff's case and the motion is overruled and defendant then introduces his evidence, he must 'renew' his

motion at the close of all the evidence. In such case the motion made at the close of plaintiff's case cannot be renewed. It is out of the case for all time and, as stated, if defendant desires to have the court of review pass on the question whether plaintiff has made out a *prima facie* case, at the close of all the evidence, he must make a second motion based on all the evidence."

We are further of opinion that the court did not err in overruling the Bus Company's motion for a directed verdict at the close of all the evidence. The question was for the jury. We are also of opinion we would not be warranted in holding that the verdict is against the manifest weight of the evidence on the ground that plaintiff was guilty of contributory negligence or that the Bus Company was guilty of no negligence, as counsel for the Bus Company contend. Plaintiff was faced with a sudden emergency and whether she stepped in the wrong direction just before she was struck, her "act is not to be viewed in the light of after events but judged under all the circumstances by the standard of what a prudent person would have been likely to do under the same circumstances." *Skala v. Lehon,* 258 Ill. App. 252 (aff'd 343 Ill. 602) ; *Barnes v. Danville St. Ry. Co.,* 235 Ill. 566; *Wesley City Coal Co. v. Healer,* 84 Ill. 126. We think in view of all the evidence in the record, these questions were also for the jury.

In addition to the evidence above mentioned, as to the physical facts, the evidence shows there was at the northeasterly curb on Ogden avenue a signboard about 20 feet northeast of Homan avenue, on which was printed the words "Slow Danger." The surroundings show there was considerable traffic at the intersection —two safety islands, two street car tracks, another signal post southwesterly of the intersection on which were also printed the words "Slow Danger."

Counsel for plaintiff say there was no small delivery truck which stopped in front of the truck at the intersection—that it was a phantom truck—that no one who

testified saw the truck except the two Gisingers. On the other side, on the oral argument, counsel for the Bus Company, in answer to a question put to him as to his theory why Gisinger suddenly turned the truck to the left, replied that the driver must have momentarily fallen asleep. In view of all the evidence we think whether the driver of the bus was guilty of negligence which proximately contributed to plaintiff's injury, was for the jury. We are unable to say that its finding in favor of plaintiff is against the manifest weight of the evidence.

The Bus Company further contends the verdict and judgment are grossly excessive; that the trial judge in his opinion said: "I believe the verdict to be excessive beyond anything that any man with experience as a lawyer and trial judge could possibly permit to stand." And counsel contend the excessiveness was not cured by the court requiring a remittitur of $25,000. The evidence shows plaintiff was 22 years old at the time of the accident and employed as a stenographer. The testimony of the doctors and the X-ray pictures disclose, as stated by counsel for plaintiff, and as borne out by the record, that plaintiff suffered a "Compression fracture of the fifth lumbar vertebral body, showing a wedging and considerable deformity with a posterior protrusion of a large bony mass into the spinal canal for a distance of five mm. Fractures of the left third and fourth transverse processes of the lumbar vertebrae the fragments being partly displaced and deformed. Fracture of the upper lateral portion of the left wing of the sacrum. Arthritic changes in the lumbar spine, . . . Tilting of the entire spine over towards the right side." After the accident she was taken to a hospital and it was found she was unable to move her feet or legs below the knee. She was given blood transfusions and injections of glucose, etc. Her attending physician called a number of specialists.

They found her unable to urinate, the bladder was distended and the intestines and lower limbs paralyzed. At the time of the trial, which was about 17 months after the accident, she was still unable to control her bladder and bowels and had to wear a rubberized pad and sleep on rubber sheets. She was attended by a nurse at the trial and could walk by using a cane on level surfaces and we think the evidence shows that she was almost totally and permanently disabled. Although she was considerably paralyzed she suffered great pain. It is impossible to measure the damages which plaintiff has sustained, and will continue to sustain, as a result of her injuries. Under the law she is entitled to be compensated for the loss she has sustained, including pain and suffering. In view of all the evidence, we are unable to say the judgment is so excessive as to warrant interference on our part. *Princell v. Pickwick Greyhound Lines,* 262 Ill. App. 298. In this case there was a verdict for $100,000 and upon remittitur of $25,000, judgment was entered for $75,000. See also *Parnell v. Holland Furnace Co.* (App. Div.), 234 N. Y. S. 567.

Counsel for the Bus Companies also contend that the court erred in permitting the witness, Dr. Oldberg, called by plaintiff, to testify to subjective complaints of plaintiff. A number of doctors were called from time to time to examine plaintiff, among them Dr. Pollock, who examined her to determine whether a certain operation would be necessary. He decided the operation was not necessary and his advice was followed. After a hypothetical question was put to him as to the possibility of plaintiff's further improvement, etc., Dr. Oldberg was called as an expert. He testified that he obesrved plaintiff's manner of walking and that it could not be simulated. This testimony was objected to by counsel on the ground that the doctor's testimony was in reference to subjective symptoms. The objection

was overruled. It seems to be admitted that the doctor was an expert and his testimony was that the symptoms concerning which he gave an opinion were objective and not subjective.

In passing on the question of defendants' motion for a new trial the trial judge said: "Counsel for defendants argue that improper evidence was admitted in the testimony of Dr. Louis Pollock and Dr. Eric Oldberg, in that subjective symptoms formed the basis for their conclusion. Both of these men are very eminent neurologists. They both understand fully the distinction between subjective and objective symptoms. Dr. Pollock had been consulted by the plaintiff's attending physician and surgeon and had advised a course of treatment long before the suit. Dr. Oldberg examined the plaintiff a few days before the trial. He stated and explained in considerable detail that the plaintiff's manner of walking could not be simulated, and that from it and other tests which he made that are not dependent upon any control by plaintiff he was able to establish causal relationship between plaintiff's present injuries and the accident. . . . I do not feel competent to overrule the statement of such eminent neurologists as Dr. Pollock and Dr. Oldberg as to what constitute symptoms that cannot be simulated against the tests which they applied. They undertook to state what were the objective symptoms and did so in a manner sufficient, in my opinion, to justify their testimony." We agree with the trial judge and hold that the testimony of the doctors was properly admitted.

A further contention is made that the court erred in permitting certain medical witnesses to answer improper hypothetical questions and to give testimony that invaded the province of the jury. The argument is that after certain of such questions were objected to, various amendments were made to the questions and that the court assisted counsel for plaintiff in shaping

up the questions. We have considered the argument made and are of opinion we would not be warranted in holding that anything occurred which in this connection was reversibly erroneous.

A further point is made that the court erred in refusing defendants' motion to withdraw a juror and to declare a mistrial when on the cross-examination of defendant, Lloyd Gisinger, it was brought out that defendant Capitol Freight Lines, Ltd., was no longer in business. The record discloses that after a somewhat lengthy cross-examination of this witness by counsel for plaintiff, the following took place: "Mr. Ryan: Are you still working for the Capitol Freight Lines? A. No, sir. Q. When did you quit? A. At the time of the accident. Q. That company is not in business any more, is it? A. No, sir. Q. When did they go out of business? A. I don't know the exact date. It was about two months after the accident. Q. Your tractor was all smashed up, wasn't it, Mr. Gisinger? A. Yes, sir. Q. Have you ever seen these pictures of your equipment? A. I have seen pictures of it. Q. Well, have you seen similar pictures to these? I will ask you to look at Plaintiff's Exhibit 16 here which is a picture of the tractor. Is that your tractor? A. Yes, sir. Q. Does that correctly portray it? Mr. Hinshaw: I would like to be heard on a matter before we go further." The court and counsel then went into chambers and Mr. Hinshaw moved the court to withdraw a juror and declare a mistrial because counsel for plaintiff deliberately went into the question of whether the Capitol Freight Lines was still in business, which had no bearing on the issues involved. The matter was discussed at some length by court and counsel. The court observed: "Why didn't you object to the question? I looked for an objection. I looked right over there. Mr. Hinshaw: Judge, if we object—the witness answers right away, if we object under these circum-

stances it only emphasizes it. The Court: I would have stopped the witness in a second if you had indicated any objection.''

Counsel say that what took place was highly prejudicial because the jury would be sympathetic to plaintiff on account of her injuries and that she would have little chance of recovering unless the Bus Company was held liable, and in support of this cite *Clancy v. Richardson*, 302 Ill. App. 99 (Abst.) and other cases. In the *Clancy* case suit was brought against the receivers of the street car company; a cartage company and two individuals. Plaintiff was a passenger in a westbound street car which was struck by a southbound truck and trailer (belonging to the cartage company in charge of the two individual defendants) as a result of which plaintiff was injured. The question was, whether plaintiff was injured through the negligence of the man in charge of the street car or those in charge of the truck, or both. During the trial plaintiff voluntarily dismissed as to the cartage company and the two men in charge of the truck, leaving the street car company as the only defendant. There was a verdict and judgment in plaintiff's favor against the street car company for $3,500 and on appeal it was argued that the finding of the jury was against the manifest weight of the evidence. The court discussed the evidence and held the contention must be sustained. The court further said that the receivers of the street car company ''were prejudiced by the action of plaintiff in voluntarily dismissing the case as to defendants Globe Cartage Company, Inc., Clarence Clark and Charles Seng. Plaintiff voluntarily dismissed the cause as to the said defendants at the conclusion of plaintiff's evidence, when no motions had been made by any defendants. Plaintiff had made out a *prima facie* case of gross negligence against the driver of the motor truck, and while she had a right to dismiss her cause as to any of the defendants, we are forced to the conclusion that her

action in that regard unduly influenced the jury in determining the material question of fact in the case. It is conceded, of course, that plaintiff was not guilty of any negligence; and that she was at least entitled to a verdict against the Surface Lines or the defendants who owned or controlled the motor truck is beyond dispute. When three of the defendants were dismissed from the cause, if the jury found the Surface Lines not guilty plaintiff, with a clear right of action against one or more of the original defendants, would have lost her suit as to all defendants. With such a situation confronting them the jury would be prone to consider the evidence in a light favorable to plaintiff." The judgment was reversed and the cause remanded for a new trial, the court refraining from discussing the evidence on the ground there would be a retrial.

In the instant case the suit was dismissed as to the two Gisingers but not as to the Capitol Freight Lines and the verdict and judgment went against that defendant as well as the Bus Company. Counsel for plaintiff say "Whether the Capitol Freight Lines was still in business was a proper subject for inquiry. In any event, defendants failed to make seasonable objection to this line of inquiry, and are in no position to urge the alleged error in this court." And continuing they say the situation is clarified by an affidavit which appears in the record made by Edmund M. Sinnott, one of the attorneys for plaintiff, in which he swears that the Capitol Lines had offices in Springfield, Illinois, and St. Louis, Missouri, etc., and that certain officers had in their possession books and records of the Capitol Freight Lines which he was informed and believed would show the destination of the merchandise on the truck at the time of the accident, and that the driver of the truck had a reason for turning north in Homan avenue to make delivery of some of the load. That counsel had been unable to locate such books or records, etc. We think the affidavit was insufficient. But we

agree with the trial judge that the objection by counsel was not made in apt time. We are also of opinion there was no error in permitting the witness, McQuillan, to testify in rebuttal concerning the number of pictures which he took shortly after the accident, of the bus, tractor and the neighborhood in question. The matter was within the discretion of the court.

Complaint is also made of the giving of instructions Nos. 1, 3, 30, 31 and 42, at plaintiff's request; 45 instructions were given and 8 refused. Instruction No. 1 told the jury that plaintiff's complaint was in one count, and then set forth most of the allegations of that count, and concluded by telling the jury that if they believed from a preponderance of the evidence, and under the instructions of the court, plaintiff had proved that defendants were guilty of one or more of the particular acts of negligence as set forth in the instruction, and that such negligence caused or proximately contributed to cause the accident, they should find the issues for plaintiff. We disapproved of the giving of a somewhat similar instruction in *Cooney v. Hughes,* 310 Ill. App. 371, but we did not reverse the judgment on that account, but said so far as we were informed, a judgment had not been reversed by a court of review in this State on account of the giving of a similar instruction. We there also said: "We think the jury here was not misled. The facts were simple, the issues easily understood. We do disapprove instructions of this character," and we are still of the same opinion but when such an instruction is given, the court, in passing on its propriety, must keep in mind whether a number of adverbs are used or other coloring given to the allegations of the complaint. (Compare *West Chicago R. R. Co. v. Lieserowitz,* 197 Ill. 607; *Liska v. Chicago Rys. Co.,* 318 Ill. 570.) In the instant case we think the jury understood the issues involved. They were not so complicated as to confuse jurors who have the qualifications required by the law. Moreover,

the court, at the request of the Bus Company, advised the jury that the complaint was an unsworn statement and did not tend to prove anything, and further, that the burden of proof was on plaintiff and not on defendant to prove the misconduct charged in the complaint.

By instruction No. 3 the jury were told that on the day of the accident there was in force a statute which required a vehicle to yield the right of way to a pedestrian crossing the roadway, and it is contended that the giving of this instruction was error because the statute ''has no application to the facts or to the plaintiff's theory of her proof.'' But this was contrary to defendants' position on the trial because at their request the court submitted an interrogatory to the jury, *viz.*, ''Do you find that the driver of the motor bus, which is alleged to have caused injury to the plaintiff, failed to grant a right of way to the plaintiff through carelessness or negligence on his part?''

Instructions Nos. 30 and 31 are complained of. Instruction No. 30 told the jury that if they believed from a preponderance of the evidence and under the instructions of the court that the Bus Company was guilty of one or more particular acts of negligence alleged in the complaint which proximately contributed to cause the accident and that plaintiff was in the exercise of ordinary care for her own safety, then they should find the Bus Company guilty. By instruction No. 31 the jury were told that if they found from a preponderance of evidence under the instruction of the court, that both defendants were guilty of negligence as charged in the complaint and defined in the instructions and that plaintiff was in the exercise of due care for her own safety, then defendants were jointly and severally liable for the whole amount of damages, if any, sustained by plaintiff and such damages might not be apportioned between defendants.

It is argued these instructions were both wrong because they referred the jury to the complaint to deter-

mine what are the charges. But we think this is not borne out by the record because an examination of the two instructions shows that the jury was to consider charges made in the complaint as defined in the instructions. We think there was no error in giving these instructions. We are also of opinion that instruction No. 31 was not peremptory. *Murphy v. Illinois State Trust Co.,* 375 Ill. 310. Furthermore, the jury were told that the instructions given "constitute one connected body and series and should be so regarded and treated by the jury, that is to say, they should apply them to the facts as a whole, and they must not detach or separate any one instruction from any or either of the others." See *Central Ry. Co. v. Bannister,* 195 Ill. 48; *Chicago City Ry. Co. v. Bundy,* 210 Ill. 39.

The complaint to instruction No. 42 is as to what the jury should take into consideration on the question of damages. It is said that the use of the word "should" has been repeatedly condemned. There are some cases where language is used which says it is not proper to tell the jury in instructions what they "should" take into consideration but what they "may" take into consideration, but we think the language is inaccurate. The jury has no option as to what evidence they should consider. The court rules on the admissibility of evidence and it is the duty of the jury to consider all the evidence admitted by the court and not that they "may" consider it if they see fit. *Meyer v. Mead,* 83 Ill. 19; *Posch v. Chicago Rys. Co.,* 221 Ill. App. 241, and cases there cited; *Walters v. Checker Taxi Co.,* 265 Ill. App. 329; *Chicago City Ry. Co. v. Gemmill,* 209 Ill. 638; *Donk Bros. Coal Co. v. Thil,* 228 Ill. 233; *Walsh v. Chicago Rys. Co.* 303 Ill. 339.

It is also contended the court erred in refusing to submit to the jury two interrogatories requested by the Bus Company. By one the jury were asked if the driver of the motor bus carelessly or negligently drove or operated it; and by the other they were asked if the

driver of the bus, through carelessness or negligence on his part omitted to slow down or stop the bus before the collision. The Bus Company submitted five interrogatories, three of which were given. By the three interrogatories the jury said that the driver of the bus negligently failed to give plaintiff the right of way (2) that the driver of the bus negligently drove it at a greater speed than was reasonably proper and the jury said in its answer to the third interrogatory that the driver of the bus negligently failed to decrease the speed of the bus upon approaching the intersection. We think these were sufficient and the refusal of the other two by the court is not reversibly erroneous.

The judgment of the Superior court of Cook county is affirmed.

*Judgment affirmed.*

McSURELY, P. J., and MATCHETT, J., concur.