DANIEL GROCER COMPANY, Plaintiff-Appellee, Cross-Appellant, *v.* NEW AMSTERDAM CASUALTY COMPANY, Defendant, Third Party Plaintiff-Appellant Cross-Appellee—(GEORGE L. LAWWILL, Third Party Defendant and Appellee.)

(No. 69-143;

Fifth District—January 22, 1971.

G. MORAN, J., dissenting in part.

Kenny & Reinert, of St. Louis, Mo. and Frank C. Mansfield, of Belleville, (Bernard A. Reinert, of counsel,) for appellant.

Wolff, Jones & Lawder, of Murphysboro, for appellee.

Mr. JUSTICE BARR delivered the opinion of the court:

Upon a jury verdict, by the Circuit Court of Jackson County, judgment was entered in favor of plaintiff, Daniel Grocer Company, a corporation, and against defendant, New Amsterdam Casualty Company, a corporation, in the amount of $3,649.62 and costs. This appeal followed.

The action is one on a blanket position bond issued by defendant to recover a loss allegedly sustained by plaintiff through fraudulent or dishonest acts committed by one of its employees. Defendant's post trial motion was denied except that its renewed motion for a directed verdict against the third-party defendant, as contained in said post trial motion, was granted, and judgment was entered in favor of defendant-third-party plaintiff, New Amsterdam Company, and against third-party defendant, George Lawwill. No appeal was filed by said third-party defendant.

The trial court denied the post trial motion of the plaintiff for allowance of attorney fees. Plaintiff cross appeals.

In 1958, the defendant executed a blanket position bond in favor of plaintiff, which bond provided, in part, as follows:

### INSURING AGREEMENT

The underwriter * * * agrees to indemnify the Insured against any loss of money or other property which the Insured shall sustain through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others * * *

### EXCLUSION

Section 2. This Bond does not apply to loss, or to that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation; provided, however, that this paragraph shall not apply to loss of money or other property which the Insured can prove, through evidence wholly apart from such computations, is sustained by the Insured through any fraudulent or dishonest act or acts committed by any one or more of the Employees.

### LOSS CAUSED BY UNIDENTIFIABLE EMPLOYEES

Section 4. If a loss is alleged to have been caused by the fraud or dishonesty of any one or more of the Employees and the Insured shall be unable to designate the specific Employee or Employees causing such loss, the Insured shall nevertheless have the benefit

of this Bond, subject to the provisions of Section 2 of this Bond, provided that the evidence submitted reasonably proves that the loss was in fact due to the fraud or dishonesty of one or more of the said Employees * * *.

The bond remained in force through June, 1963.

The third-party defendant, George L. Lawwill, was an employee of plaintiff and manager of its White City Market store in Herrin, Illinois, from the day it was opened during or before 1958. His duties included causing store receipts to be deposited in the local bank and making written weekly reports thereof to plaintiff's office at Murphysboro, Illinois. Overages or shortages were required to be listed in the reports. On April 27, 1963, the depository bank informed third-party defendant Lawwill of a $1,000.00 shortage in his deposit. This he corrected by taking that amount from the cash on hand at the store and depositing same in the bank to conform the actual deposit to the deposit slip. Other shortages appeared thereafter until about June 9, 1963, when the arrearage increased to more than $3,600.00. Each week during this time Mr. Lawwill signed and returned weekly reports, false to the extent that the shortages were not revealed to his employer, the plaintiff herein.

However, on June 12, 1963, Mr. Lawwill did by telephone advise plaintiff of the total arrearage and of his concern about same. He subsequently admitted that the weekly reports were incorrect but denied taking any of the monies. He could not account for the apparent loss or shortage. Investigation subsequently showed a shortage of $3,649.62 to and including the week of June 12, 1963.

After a telephone call to his insurance broker under date of July 19, 1963, plaintiff, by J. C. Daniel, its Vice President, forwarded a letter and affidavit of loss to defendant. The letter reads in part "While we have completed this affidavit, we are not reporting to you that Mr. Lawwill himself embezzled this money." It is noted that after June 12, 1963, no significant cash shortage or overage appeared.

Thereafter, at the instance of the defendant, and with plaintiff's consent, an audit was made of plaintiff's books and records, which audit did, in fact, verify the loss reported to defendant by affidavit. This audit, in the absence of the auditor, who was unavailable for trial, was admitted into evidence.

In this appeal defendant presents several grounds for reversal of judgment. Principal of these are that proof was insufficient that the plaintiff, in fact, actually sustained the loss. Secondly, that if said loss was in fact sustained, there is insufficient proof that it resulted from fraudulent or dishonest acts committed by any of its employees and, thirdly, that if the loss was in fact sustained as contended by plaintiff

that plaintiff failed to recoup or mitigate its loss for which it was obligated so to do under the circumstances of this case.

The evidence showed that shortly after being advised of the shortage by its employee, Lawwill, the plaintiff caused an examination of its records and equipment to be made and immediately notified the defendant of the alleged shortage. Thereafter, defendant engaged one Denny D. Rotramel, a Certified Public Accountant, to examine the books of plaintiff and plaintiff cooperated in all respects with this examination.

The report of the accountant, who, for some reason not disclosed to the court, was not available to either party at the time of the trial, revealed the shortages were as contended by third-party defendant Lawwill. This audit was submitted into evidence and the admission thereof is contended error by the defendant and proper by the plaintiff and both parties cite as authority the case of *Bartlett v. Wheeler*, 195 Ill. 445.

■■ Considering the circumstances under which the audit was made, the fact that it was an independent audit by one engaged by the defendant for same, that it was introduced as an exhibit by plaintiff, it is the opinion of the court that under the authority cited above the audit was properly admitted into evidence by the trial judge. An effort was made by the defendant during the course of the trial to obtain the production of records upon which the audit was based. Presumably these would have been voluminous. The trial court at that time could have caused the records to be delivered in court by the plaintiff. This it neglected to do. But as a practical matter the defendant could have easily discovered this data before the trial, the data having been made available to its auditor, and the refusal of the court to permit an in court audit during the course of the jury trial by the defendant, in the opinion of this Court, was not such as to cause a reversal of the judgment herein.

As stated above the audit did reveal a loss sustained by the plaintiff. This in addition was substantiated by the fact that all of the cash registers involved were examined or caused to be examined by the plaintiff and all found to be accurate in their operation. In its verdict and in its special interrogatory the jury found that a loss was actually sustained and this court would be presumptuous if it would otherwise find considering the audit of the certified public accountant and considering the finding of the jury after evidence was presented to it in open court.

In the case of the *Home Indemnity Company v Reynolds and Company*, 38 Ill.App.2d 358, the court interprets the word dishonest, on page 375 thereof, as follows: "The word 'dishonest' when used in fidelity bonds has been interpreted in many cases. It has been held that it is to be given a broad meaning and that it includes: 'an act manifestly unfair to the employer and palpably subjects him to the likelihood of a loss,' one

which 'indicates a reckless, wilful and wanton disregard for the interest of the employer' and 'wrongful acts which, although not criminal, nevertheless display significant lack of probity, integrity or trustworthiness.'" The same case held that to be dishonest the act "'need not to be such as would involve criminal liability of the employee for its commission' and that 'it is not a necessary condition that the employee personally profited by his acts.'" Further, the court, said "If reasonable men can differ whether the acts were dishonest, within the wide scope of that word, the question is one of fact for the jury."

Each week third-party defendant, Lawwill, as plaintiff's manager, did report on the cash status of the store where he was employed and forward same to his employer. This he did in such a manner that he purposefully concealed his shortage and continued to do so for a period of time until said shortage approximated $3,600.00. The obvious purpose of the report was to give his employer an accurate evaluation of the store's current standing cashwise during this period of time and should shortages occur to give his employer an opportunity to find and correct same. It wasn't until the shortage reached the proportions as stated above that the plaintiff was advised of the inaccuracy of these reports upon which he was dependent.

Thereafter, after investigation of records and equipment by plaintiff, a report of loss was made to the defendant surety company, and immediately following the last report it is to be noted no further shortages occurred. This left it to the jury to determine whether or not the reports of the defendant, Lawwill, purposefully incorrect, were a proximate cause of the eventual loss suffered by the plaintiff. The jury so found. To contend, as does defendant, that these reports in no way occasioned the loss suffered by the plaintiff, is little more than argument since there is no evidentiary basis to sustain this contention and the jury, having heard the evidence found by special interrogatory and by verdict that the losses were related to the reports as contended by the plaintiff.

■■ The failure of the plaintiff to withhold funds from third-party defendant, Lawwill, while he was still in plaintiff's employ is also considered by the defendant as a material failure on the part of the plaintiff. At no time, either before, during or after the trial, did plaintiff contend that the money or shortage of money was actually taken by the third-party defendant, Lawwill. In fact, the original report to the company indicated that the company did not know with any degree of certainty nor charge Lawwill with having taken these monies. Having taken this position the plaintiff could not begin withholding money from Lawwill without basis so to do. Defendant cites no cases as authority positing such a duty upon plaintiff.

The *voir dire* was not reported but the dispute involving the defendant's challenge of juror Davis, after having previously accepted him, was summarized by court and counsel into the record, and in view thereof we view no abuse of discretion of the court in this instance. *People v. Joyce*, 154 Ill.App. 13.

■■ Defendant states that the trial court should have allowed defendant's motions for summary judgment and for a directed verdict in that the issues are matters of law and not of fact, but considering the evidence, the issues of fact presented, the resolution of which if favorable to plaintiff would entitle it to relief, it was not error for the trial court to deny the motion for summary judgment. (*Schmidt v. Massey Ferguson Co.*, 96 Ill.App.2d 368), nor to deny the motion for directed verdict under the rule set forth in *Pedrick v. Peoria and Eastern Railroad Co.*, 37 Ill.2d 494.

■■ This case is bizarre in that the original issues only were presented to the jury and consideration of the third-party's liability to the defendant-third-party plaintiff was reserved by the court and not submitted to a jury, (Ill. Rev. Stat. 1967, ch. 110, par. 68.1). In its post trial motion the defendant-third-party plaintiff renewed its motion for directed verdict in its favor and against third-party defendant, Lawwill, and the Court did allow this motion and enter judgment against third-party defendant, Lawwill, staying execution, however, until the judgment was satisfied in the initial action by the defendant. This Court finds that the third-party plaintiff, New Amsterdam Casualty Company, was in no way prejudiced by this since it obtained the relief it sought in the judgment against third-party defendant, Lawwill.

There remain two other areas presented by defendant to be considered by this Court, one having to do with a special interrogatory and one having to do with jury instructions. Special Interrogatory No. 1, tendered by the defendant, reads as follows:

"Question: Did the plaintiff sustain loss through any false or misleading statements made to it by the third-party defendant, as charged in the plaintiff's complaint?"

and this was refused by the trial court.

Special Interrogatory No. 2, tendered by the defendant, reads as follows:

"Question: Did Lawwill commit any fraudulent or dishonest act or acts through which the plaintiff sustained loss?"

■■ This interrogatory was given by the court, submitted to the jury, and answered in the affirmative. Defendant contends it was entitled to the submission of both Interrogatories Nos. 1 and 2 but the trial court only submitted No. 2, and inasmuch as they are somewhat duplicitous in their content, and the third-party issue was removed from the jury's considera-

tion, we are of the opinion the action of the trial court was proper. *Clarke v. Storchak*, 384 Ill. 564, and *Goldberg v. Capital Freight Lines, Ltd.*, 314 Ill.App. 347.

■■ The main thrust of defendant's objections to the instructions of the court are directed to the absence of reference to the third-party liability of defendant Lawwill. Inasmuch as we can find no prejudice to defendant third-party plaintiff by reason of judgment having been entered in its favor against third-party defendant, George Lawwill, we deem it unnecessary to consider these objections. Examination of the instructions reveals the complete definition of issues, burden of proof, and theories of the parties herein, and these, coupled with the given Special Interrogatory No. 2, recited above, bring us to the conclusion that the jury under the evidence was adequately instructed and informed as to the burden, issues, theory and law in this case.

■■ As to plaintiff's cross appeal of the order of the trial court denying the post trial motion of the plaintiff for allowance of attorney fees which motion is predicated in Ill. Rev. Stat., ch. 73, par. 767, we affirm the order of the trial court. Under the total circumstances herein, we find no abuse of discretion of the trial judge in denying plaintiffs' said motion.

Accordingly, finding no error which warrants reversal, we affirm the judgment of the circuit court of Jackson County in favor of plaintiff on the original issue in this cause and we further affirm the judgment in favor of defendant and against the plaintiff in regard to plaintiff's post trial motion for attorney fees.

Judgment affirm.

EBERSPACHER, P. J., concurs.

Mr. JUSTICE G. MORAN dissenting in part:

The majority opinion correctly states that at no time, either before, during or after the trial, did plaintiff contend that the money or shortage of money was actually taken by the third party defendant, Lawwill. However, plaintiff does contend that Lawwill's failure to report the shortages were dishonest acts within the meaning of the policy which caused him loss. I agree that Lawwill's failure to report the shortages described could have caused plaintiff to lose the amounts that he failed to report after the first loss of $1,000.00, because if plaintiff was notified of them it could have taken steps to protect itself. However, the failure to report the first $1,000.00 shortage could not have harmed plaintiff, for that money was already gone. I would therefore affirm in the amount of $2,649.69.